UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 17-424(DSD/FLN)

Dave Long,

        Plaintiff,

v.                                     **ORDER**

Jill Miller,

        Defendant.

       Mark J. Briol, Esq., Scott A. Benson, Esq., and Briol & Associates, 80 South 8th Street, Suite 3700, Minneapolis, MN 55402, counsel for plaintiff.

       Jonathan S. Parritz, Esq., Judah Druck, Esq. and Maslon, LLP, 90 South 7th Street, Suite 3300, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon defendant Jill Miller's motion to compel arbitration and to stay proceedings. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted.

**BACKGROUND**

This dispute arises from Miller's business relationship with plaintiff Dave Long. The court will recite only those facts and allegations relevant to the narrow issue presented. For several years, the parties were engaged in the business of operating Medifast, Inc. franchised weight loss clinics in Minnesota and Wisconsin under the corporate name Minnesota Weight Control, Inc.

(MWC). Arb. Demand ¶ 1; Compl. ¶ 6. Long appointed Miller as the CEO of MWC in 2012 and sold her a ten-percent stake in the company pursuant to a stock purchase agreement dated August 1, 2012 (SPA).[1] Arb. Demand ¶¶ 2, 18. On October 15, 2012, the parties entered into an amended and restated shareholder agreement (Shareholder Agreement) in which Long was appointed sole director of MWC. Id. ¶ 19.

In 2013, Long formed Washington Weight Control, Inc. (WWC) to run newly franchised Seattle-area clinics. Id. ¶ 20; Compl. ¶ 7. As with MWC, Long serves as WWC's sole director and Miller as its CEO. Arb. Demand ¶ 20. Long owns seventy percent of WWC and Miller owns the remaining thirty percent. Id.; Compl. ¶ 8.

In October 2013, WWC borrowed $1.5 million from Bank of America to finance its business operations. Compl. ¶¶ 12, 14. Long and Miller personally guaranteed the loan. Id. ¶ 13. WWC was only in business a short time, however; it closed all four of its locations by September 2014 and later filed for bankruptcy. Id. ¶¶ 16-17. Long then restructured the Bank of America loan. Id. ¶ 19. Under the new loan agreement, Long and Miller were jointly and severally indebted to Bank of America. Id. MWC and Medifast guaranteed the loan, and MWC, in turn, agreed to indemnify Medifast. Arb. Demand ¶ 23. Long then paid the entire loan amount

---

[1] Miller purchased additional stock in 2014 under a substantively similar stock purchase agreement. Arb. Demand ¶ 26; id. Ex. 3. The court will refer to both SPAs collectively.

to Bank of America, which meant that Miller directly owed Long her portion of the debt - $427,848. Compl. ¶¶ 20-21. According to the complaint, Miller has only paid Long $270,000 of that amount and refuses to pay the remainder. Id. ¶¶ 22-23. Long and Miller nevertheless continued to work together at MWC for nearly two more years.

On August 12, 2016, Long fired Miller from MWC and demanded that she forfeit her shares in MWC pursuant to the SPAs. Arb. Demand ¶ 32. On October 19, 2016, Long and MWC filed a demand for arbitration and statement of claim with the American Arbitration Association (AAA) seeking declarations that (1) Miller breached her duties under Minn. Stat. § 302A.361 and was lawfully terminated, and (2) Long has the right to enforce his stock repurchase rights and that Miller is obligated to tender her shares to MWC. Long's arbitration demand was consistent with dispute-resolution provision in the SPAs and the Shareholder Agreement. Specifically, the SPAs provide:

> Any disputes (of whatever kind or nature, whether in law or in equity) arising out of, relating to or concerning the validity, specific enforcement, breach, or interpretation of this Stock Purchase Agreement shall be submitted to binding arbitration before a single arbitrator which proceedings shall be held in Hennepin County, Minnesota.

Arb. Demand Exs. 23 ¶ 7.10. The Shareholder Agreement likewise provides:

> Any disputes (of whatever kind or nature, whether in law or in equity) arising out of, relating to or concerning the validity, specific enforcement, breach, or interpretation of this Agreement shall be submitted to binding arbitration before a single arbitrator.

Id. Ex. 1 ¶ 7.2. All three agreements further state that the arbitration "shall be conducted pursuant to the then-current Commercial Arbitration Rules of the American Arbitration Association." Id.; id. Exs. 2 & 3 ¶ 7.10. The arbitration is ongoing and is currently in the discovery phase.

On February 8, 2017, Long filed this suit against Miller seeking the remaining $157,848 owed on the Bank of America debt under the theories of statutory, implied, and equitable contribution. Long also seeks a declaration that Miller's home in Coon Rapids should be exempted from homestead protection so that he may use her interest in that home to collect on any judgment. Miller now moves to compel arbitration and for a stay. Long maintains that proceeding in court is appropriate because the documents relating to the Bank of America loan do not contain an arbitration provision.

## DISCUSSION

In deciding whether to compel arbitration under the Federal Arbitration Act, the court considers: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within that agreement." Faber v. Menard, Inc., 367 F.3d

4

1048, 1052 (8th Cir. 2004). The threshold question, however, is whether the arbitrator or the court has the authority to decide whether a particular dispute is subject to arbitration. "The question whether the parties have submitted a particular dispute to arbitration ... is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 649 (1986)). The Eighth Circuit Court of Appeals has held that an agreement to arbitrate that mandates arbitration consistent with the AAA's rules "constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009); see also N. Am. Composites Co. v. Reich, No. 15-3537, 2016 WL 471353, at *1-2 (D. Minn. Feb. 5, 2016) ("[W]here, as here, the parties explicitly incorporate the AAA rules of arbitration, the parties have delegated the question of arbitrability to the arbitrator."); Barkl v. Career Educ. Corp., No. 10-3565, 2010 WL 4979231, at *2 (D. Minn. Dec. 2, 2010) ("Where an agreement to arbitrate mandates arbitration in accordance with the [AAA] Rules, the parties to the agreement have clearly and unmistakably agreed to assign the question of arbitrability to the arbitrator in the first instance.").

Here, the court finds that the question of arbitrability must be determined by the arbitrator notwithstanding the absence of an arbitration clause in the Bank of America loan documents. In the SPAs and Shareholder Agreement, the parties agreed to arbitrate at least some of their disputes. They also agreed to incorporate the AAA rules into their dispute resolution, which evinces their intent to reserve the question of arbitrability to the arbitrator. Under these circumstances, whether the instant dispute falls within the scope of the broadly worded arbitration clauses in the SPAs and Shareholder Agreement is an issue reserved solely for the arbitrator. See Principal Life Ins. Co. v. Caremark PCS Health, LLC, 56 F. Supp. 3d 1013, 1019 (S.D. Iowa 2014) (referring the question of arbitrability to the arbitrator under similar circumstances).

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to compel arbitration and to stay proceedings [ECF No. 8] is granted;

2. This matter is stayed pending completion of the arbitration or a determination by the arbitrator that the issue is not subject to arbitration;

3. The joint motion regarding continued sealing [ECF No. 22] is granted; and

4. The following documents shall remain sealed until such time as the court rules otherwise: ECF Nos. 12, 13, 14, 15, and 16.

Dated: May 11, 2017

s/David S. Doty
David S. Doty, Judge
United States District Court